Our next case is number 17-14824 L.J. v. School Board of Broward County. Ms. Siegel. Ms. Siegel. Yes. May it please the court, I'm Jody Siegel. This is Kirsten Anderson, attorneys with Southern Legal Counsel and Kevin Golombieski with Bernie and Tseng. We represent L.J., the plaintiff appellant in this case. Before you get going, so I don't interrupt your train of argument, the only thing that's at issue here are attorney's fees right now because there's no relief that . . . Oh, I see. For the relief? No, that's not correct. In terms of relief, right? Compensatory education. Because there's still compensatory education despite his age? Yes. Compensatory education is permissible beyond the age . . . No, I know it generally is, but a lot of times it depends on the age of the child as well. It's our position that the cases hold that compensatory education is allowable at any when there's a finding that the school board failed to provide an appropriate education. So it does not matter that he is over the age of the IDEA. So he's not eligible to go back to public school, but he is eligible for compensatory education in another manner. If you could remind me and then I'll let you go with your argument, what, if any, compensatory education did the administrative law judge order? The ALJ ordered four years of compensatory education. What we think at this point, since it's been a long time, to have a remand to go back, not for a determination of liability, but for a determination of the compensatory education and what he currently needs in order to make up for the failure to implement the IEP and the behavior plan. So that we would, the district court would hear evidence about what would be appropriate. We aren't here telling you what's appropriate and to order that, but the district court can take evidence and determine that. Okay. Go right ahead. This case is about what standards should be adopted in this circuit for determining when a failure to implement an individualized education program or the Individuals with Disabilities Education Act, or IDEA, and whether in this case the implementation failures denied LJ an appropriate education. Other circuits have addressed this and used what has become known as the materiality standard in which a court would, one, determine if there are failures to implement an IEP, two, analyze the significance of the failures on the child's education using either the old Raleigh Educational Benefit Standard before Andrew or now would use the current Andrew F. Progress in Light of His Circumstances Standard, and then three, determine whether the failures taken together materially impacted whether the child received an appropriate education. The ALJ correctly applied this legal standard. The district court made substantial legal error by only determining if there were implementation failures without analyzing the significance of those education under either Raleigh or Andrew, and by failing to determine whether the failures taken together materially impacted whether the child received an appropriate education. On top of those errors . . . Yes? As I read the ALJ's order, there were deficiencies found in two respects. One was implementation issues, but there were also findings about the plans themselves, and I use that term generally, were inadequate in certain respects, right? The ALJ made findings that the behavior plan was inappropriate, and the reason that's an implementation failure is that the behavior plans that were in place had part of it because behavior is not static, it changes, and so it actually explicitly said that they needed to be updated to accommodate newer behaviors and to change that plan as appropriate. That was an implementation failure by not doing that. So when the ALJ said it was ineffective, it was really an implementation failure, and that's what the ALJ found. How do you manage that type of need for change in the context of a stay-put order? The stay-put of the IEP is looking at what services were promised and whether those were implemented. So that is what the ALJ found, looked at those. But in terms of a behavior plan, since the behavior plan itself envisioned change, then that change had to be implemented as well. So how the ALJ looked at it and what the testimony discussed was whether the behavior plan was appropriate and effective in order to address and teach ALJ appropriate behaviors and to get him to school, and that was their responsibility. There is another aspect of stay-put which the district court mentioned of John M., the John M. case about flexibility. So there is some flexibility that would be allowable, however, the John M. case and what is appropriate is to look whether those need, the need for change and not applying it in the middle school versus the elementary school, whether there is really a reason. And the ALJ specifically looked at the buddy system which was required and the weekly meetings of the teachers which was also required. The district court found that there needed to be some flexibility, but the ALJ specifically found that those were, the excuses given by the school board were not reasonable and that they could have and should have been implemented. And so, there really was no need for any flexibility because the school board could have implemented the entire IEP. On the implementation issues, the district court laid out the appropriate legal standard, right? The district court laid out the appropriate legal standard, however, the district court didn't apply that standard. I know you have issues about application and interpretation and lack of giving way to the ALJ and all that, but I just want to figure out where you think the deficiencies are in terms of laying out the implementation side of the case. The district court laid out the correct general standard, right? The district court looked to Bobby R. since there is no standard in this court, in this circuit, and laid out Bobby R., but where the district court went wrong in laying that R., not just implementing it, but in a prior order, had said that Rowley doesn't even apply. And so, that's where we think just applying Bobby R., if he had applied Bobby R. appropriately, fine, but he did make a legal error in saying that there's no appropriateness that needs to be addressed in looking at implementation. So, he didn't really lay it out sufficiently. That's one of my questions. Is the implementation standard a separate procedural question that we and the district court can evaluate in terms of Bobby R.? Or is that reflective of some substantive requirement that may have shifted between Rowley and Andrew F.? I think at this point, if we're going to adopt a standard, it needs to incorporate Andrew F., which is the current legal standard. And because the materiality standard involves looking at appropriate education. So, it isn't different in that way, because the IDEA, specifically, in the F.R.I., the U.S. Supreme Court case, the only real relief that an IDEA case has is whether an education was appropriate. So appropriateness is the standard. Whether you're looking at an IEP when it's drafted or looking at the appropriateness of the education. Rowley was the old standard of how to look at whether an appropriate education is envisioned. Andrew F. is the new looking at whether the child's, it's appropriate in light of the child's circumstances. Materiality incorporates the appropriateness idea. I can see that that's one way to interpret it, but couldn't you also separate it and say when you're first developing the IEP, it needs to meet whatever the appropriate standard is. Whether before some had a conception of what that meant under Rowley, and now we know a little bit more about what that means under Andrew F. But that once you've got the appropriate IEP, that the question is solely with regard to its implementation, rather than importing an additional substantive standard. Well, it's not a yes or no. Yes, it does incorporate, materiality is what you're looking at. But in order to determine materiality, there's no way to determine it without looking at the appropriateness of what was implemented. And that's where the district court looked at 4% shortfall, 13% shortfall, and looked at those in a numerical way and said that can't be material. But the only way to determine that and where the district court failed was looking at the importance of whatever the service was that was a shortfall, and determine exactly the import of it, and then determine whether or not an appropriate education in light of the child's circumstances was provided. So when you look at the IEP, it's kind of looking forward, and you're looking at the implementation, you're looking backward in a way. But they both look at the appropriateness of the education. So would your argument be that if one child has a Cadillac IEP plan that everyone agrees is outstanding, and maybe even goes beyond what would be required at the minimum level, and it misses, the implementation misses by a relatively significant mark, but you can still, the school can still argue, well, this child's still made appropriate progress in light of their circumstances. Then even if that standard was missed by, say, 25 or 50%, maybe that's okay. Whereas if the IEP, as drafted, just barely reaches, just barely reaches that appropriateness standard, and then the implementation is only off by 2%, but that 2% takes the child down below the under F standard, then that would be a failure? Is that a correct version of your argument? Well, I guess I would start from the premise that you just take the IEP, we're not determining whether it's a Cadillac or the Chevy, you're just determining what was crafted. So the team carefully crafted an IEP based on his needs, and so it needed to be fully implemented. So I don't know that there is an IEP that has a Cadillac that you can look at it that way, you just need to look at the import of it. I mean, maybe you can look at it, and if you're under your assumption that there is a Cadillac, and there may be an extra service that really didn't have a whole lot to do with the importance of his education, yes, a district court could look at that and say that really wasn't that important to his education, and so it's really not a matter of percentage. It's a matter of the import of what the service is that wasn't provided, and the district court did not do any of that analysis. Can I ask you a sort of procedural question? Yes. I want to ask your colleague the same thing. Okay. This case has been around for a long time. Yes, it has. And at the time that the ALJ ruled, Andrew F. was not around. That's correct. When the district court ruled, Andrew F. had come out, and the district court was notified of Andrew F. That's right. The district court really didn't discuss or apply Andrew F. So now, we were in the unenviable position of having to figure out just procedurally, forget about who wins and who loses, whether to apply Andrew F. to an ALJ decision to which we have to give due weight and to a district court decision which didn't address or really discuss Andrew F. Right. What do we do? Well, I think . . . We just do it, take the record, and just say, okay, here we go, Andrew F. all the way through, and we'll do what we do, and that's the way it comes out? Well, I think because the district court specifically held Rowley was not applicable, if the district court, even after Andrew F. came out, applied Rowley and applied the educational benefit and looked at the significance and didn't look at Andrew F., it wouldn't be reversible error. It's the fact that he didn't look at any appropriateness of the education, anything about the import of the education to determine materiality. That's the error. So whether it was Rowley, so at the time that the ALJ . . . No, I know what the alleged error is. My question is, assuming you are right, what do we do about that error? You want us to remand for proper application or you want us to take the role of a trial court and apply the normal standard that a district court would apply? The Eleventh Circuit does sit in the same shoes as the district court and can affirm the ALJ because it was a cold administrative record that this district court was looking at. The district court didn't take any additional evidence, was not making his own findings. So yes, you can look at what the ALJ did, determine that it was appropriate, determine that it used the correct legal standard, had sufficient findings that supported the conclusion and was thorough and careful, which it was. Every single thing that the ALJ concluded, there was support for it and made extensive findings and conclusions and yes, this court can just go directly to the ALJ order and affirm that, reverse the district court, does not have to send it back to the district court to determine any kind of factual findings. It already had that opportunity and only remand for determination of compensatory education. All right, Ms. Siegel, thank you very much. You saved your time for rebuttal. Mr. Gill. May it please the court, Hudson Gill on behalf of the School Board of Broward County. Touching on the Andrew F. issue, the school board's position is that there are different types of challenges under the IDEA and there are what Rowley and Andrew F. dealt with were content-based challenges to the IEP, meaning that an IEP was drafted and provided and that one party, typically the parent, objected to the content of that IEP, saying that that did not offer a free and appropriate public education and Rowley first laid out the process for that and then Andrew F. amended it and, I mean, it's a two-step process. First, you look at whether the school board complied with the procedural aspects of drafting the IEP and then there's a substantive component, which you look at whether the IEP was, now under Andrew F., reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. This case is kind of a more narrow subset that doesn't come up very often, as much, which is an implementation challenge, saying that we're not challenging what the IEP offered, we're challenging how you implemented it and it's just simply a different test that has come about and the Bobby R. test was the initial one, but the Van Dunn case from the Ninth Circuit also adopted and a couple others and it's really a material failure standard. I thought that the ALJ had at least concluded that some of the plans were substantively insufficient. Well, so you have an IEP, which was one of the aspects, and we're, in this case, on a state put IEP and then part of that is the IEP says that behavior will be addressed through a functional behavior assessment and a behavior intervention plan and those were provided and the ALJ did make some enough and what Judge Marra did appropriately is look at what the IEP required, the content of the IEP, the specific wording and what the school board did and what the record testimony was about that and he concluded that those complied with the IEP, they were sufficient and the school board did what was required of it. I'm focusing on paragraphs 357 and 359 of the ALJ's order and the ALJ said, and I know you may take issue with it, that the child's PBIP was inadequate, quote unquote, to meet his needs and the 2007 PBIP was almost identical to the previous one and that was a problem too. That one is not just a failure to implement, right? That's more on the substantive level that Andrew F. begins to speak to. Well, it's a little bit of a, I guess, a hybrid or a unique circumstance because, you know, the IEP is what we're here about and that's the educational plan that's provided, the behavior plan, the PBIP is positive behavior intervention plan, I believe is what it stands for. It's something that the IEP says behavior will be addressed through. So it's, you know, that's what the IEP says, that's what we're required to do and address it through it and then there is, I guess, you have to look at whether what they're, how they do it is sufficient but it's how they're implementing the IEP, it's an implementation aspect of the IEP is what the school board's position is and we think that those tests require you to look at, you know, what the IEP specifically requires, you know, that's all the school board's required to provide. You can't invent new things and then what was actually provided and that's a standard. And the Judge Morrow's role and the district court's role here is certainly he has to give due weight to the ALJ's findings but he is permitted to accept those conclusions when they're supported by the record and he's permitted to not. If he rejects them, he is required to explain why and that's what he did in this case. The parent here challenged the substance of the child's PBIP or its implementation? If you look at the initial due process which was filed and there were some amendments done but it's part of the record, that is merely just challenging the implementation of the IEP. That is what this case was about. It was an implementation case from its inception. Does the ALJ have the authority to conclude that a plan is substantively insufficient in the face of a challenge to that plan's implementation? No, I mean a due process complaint which commences this process is like a complaint in a lawsuit. It defines what the issues are and the ALJ and the parties are bound to limit it to what those issues are. You can't go outside and bring up other issues you're not supposed to. They're supposed to be limited to what the parent's actual challenges are in this case. With respect to what I guess due weight is warranted for this ALJ's order, I think if you look at Judge Morrow's opinion, he had really two problems that he identified. One, he notes that at times the ALJ appears to be employing some different standard that simply doesn't exist. The one example that stuck out was with respect to capturing data. The ALJ says they captured sufficient data but not all data and then found a violation there and Judge Morrow said, well that's not the standard. Standard isn't all data. It's if you're getting sufficient, you've met it. The other problem the ALJ has is while there are a lot of findings in here, there's no citation to the record, the actual testimony, and there's only a handful of citations to exhibits. Why is that a problem? Because for a district court reviewing that, when you want to determine whether those findings are supported by the record, you have to then go back and comb through what was here was 19 days of testimony to find where they are and that's what Judge Morrow . . . That happens a fair amount of the time in our work. A district court sometimes provides you exact citations to transcript page and line and sometimes they just say, here's the testimony, here are my findings, here's what I say about credibility, so forth and so on with no findings at all and then it's up to the parties to tell an appellate reviewing tribunal this was supported because the testimony in the record said X and Y and here are the pages. I mean, I understand the point that the ALJ could have said more in terms of citation but why is a failure to provide book and verse a problem in terms of the due weight you give to the order? I think when you combine that with what Judge Morrow recognized where he's applying . . . appears to be applying a different standard in some cases, it impacts the deference given but nonetheless Judge Morrow appropriately as he's permitted under the standard, he can review those findings and look for the record and what he found was a number of them weren't supported by the record. He goes point by point through the ALJ's order and his order citing sometimes verbatim to the testimony and says, well, this is what the actual testimony showed or this is what the documents actually showed when we review them and determined that those findings weren't supported by the record or the conclusions weren't supported by the law. And there's another component or two components, I guess, that are . . . Without a doubt, I would agree and in terms of what you're . . . Somewhere in the netherworld of standards of review and you sort of like, yeah, if it sounds okay and feels okay, then maybe I won't disturb it but I have the authority to disturb it and it's not clear error review and it's not abuse of discretion and it's not substantial evidence and not clear and convincing and . . . I think we would . . . We're all stuck with that. It's just a . . . We'll stipulate to that and I would agree that the Eleventh Circuit, your role here when it's a court administrative record is, you know, you can sit in the same shoes as a district court so maybe, unfortunately for you, you can go back through those 19 days of testimony and those hundreds of exhibits and determine whether Judge Morrow's order was appropriate. But there are, I guess, two points that I think are important, which one was touched on that this is a state put IEP that they're being alleged they didn't implement fully and it wasn't just a year old. It's three or four years old. It's from when he was in the third grade and drafted then and it was presumably appropriate for him in the third grade but now you have a student who's in the seventh and eighth grade is five and six years older and so what the John M case says is you have to, you know, when you're looking at an implementation case in that sense, you have some flexibility and things that might have been appropriate when you're in an elementary school where you're in one classroom all day and things might not be appropriate when you're now in a situation where you're transferring from class to class with different teachers. The example, one of them that sticks out is the ALJ faulted the school board for not having because one of the requirements of the IEP was that the gen ed teacher would attend meetings on a certain basis and he faulted the school board because in middle school there's now, I think, five or six gen ed teachers. The IEP doesn't address that because there's only one gen ed teacher below and he says, well, that gen ed teacher should have conferred with the other ones before attending the meeting but again, that's not a requirement of the IEP and because we're in a state put IEP, there should be some flexibility in implementing that and to find that being an error in implementation when it's not what's required is simply inappropriate. The other issue, which Judge Morrow noted, is the fact the student wasn't in class for a majority of the time at issue here. We're looking at 2006 and 2007 and 2007-2008 and if you look at what is exhibit 586 that was entered below, it's a summary of his attendance and there's a lot of ways to parse that information but if you look at total number of class periods that would have been available for that student and what he actually attended, it comes out to about 22 percent so he's only in class 22 percent of the time and then to say that, oh, well, we only provided X number of speech and language classes or OT sessions, which is what the ALJ did without putting it in context is inappropriate. You have to look at when was he actually there and then what was required when he was there. What level of responsibility does the school and the school district have towards putting in place strategies to get him into class so that those other portions of the IEP can be implemented? Well, they do have some responsibility and in this case, they'd already identified him as a student that had special needs. He already had an IEP. They, in fact, developed a new IEP in August of 2005, which they weren't allowed to implement because as the parents write, it was challenging it and then in addition to that and Judge Morrow lays out some of the strategies that were designed to make him feel comfortable that the school board also, especially at the beginning of the 2006-2007 school year, had numerous meetings to develop certain strategies like social stories to get the student into class. But part of the problem is this wasn't a case where the student was coming and eloping from class and leaving out. Oftentimes he wasn't even making it to the bus stop or making it onto campus. What the evidence showed is once he got onto campus, the school board was successful in getting him to stay on campus longer. While aversion, which is what I guess the term is, school aversion was part of the reason he missed time, there were a host of other reasons. Oftentimes he would leave school early as his parent would come get him so that he would only attend one or two classes per day and then leave. That's not a school aversion issue. That's the parent withdrawing him from class. There were other times when the parent withdrew him from school for extended periods of time. I think at the end of the 2006-2007 school year, there was a nine-week period where he didn't attend school at all because the parent withdrew him. At the beginning of the 2007-2008 school year, he attended a private school through a McKay scholarship, which again is the parent's right, but he's not in school during that time for us to provide services to. While there is some obligation on the school board to make sure students get to class, if they're being withdrawn by their parent or they're never even making it onto campus, it's difficult to do. We can't go to their house and extract them from their home. There's limits to what the school board can do. How typical is it that it would take this long to work through this process? Because you can certainly see how an IEP may need to change over time, and it's the parent's right to challenge the new IEP, but when it drags out over this number of years. How typical. I've been in these cases at all levels, and it's an unfortunate byproduct of how the system works that sometimes there's so many issues and you have an ALJ who's going to let things in that the administrative hearing drags on for an extended period of time, and it takes a long time. I mean, the system is designed to be quick, so you can get rulings, but some of the cases don't lend themselves to that, and you get these situations where they drag on for, now it's been years. What would you like us to do with regards to Andrew F., which was not around when the ALJ ruled? Well, Your Honor, I mean, our position is Andrew F. doesn't really apply to this type of claim. I mean, that is a... So you think this is all about implementation? I do, Your Honor. I think that's what was framed below, and that's what the case is, and so Andrew F. deals with a specific type of challenge, the most common one, the content-based challenges. This is an implementation challenge. There's case law that obviously the Supreme Court or this circuit hasn't spoken, but plenty of other circuits have, and they basically have adopted the same test. That's the material failure test, and you do look at progress in that. I mean, that's part of what I think the Ninth Circuit said in the Van Dunn case, but it's not the end-all, be-all of the analysis. It can be relevant, but it's not dispositive. You have to look at all the circumstances of what's required by the IEP, what was actually implemented, and why those deficiencies, to the extent they existed, were there. Would your request involve some sort of presumption or assumption on the part of the court that the IEP itself met the appropriate standard? Well, yes, because that IEP was not challenged. You know, the procedural history of this is this is developed in third grade in 2002. It's implemented for a number of years as he's transitioning from elementary school to middle school. A new IEP is created. That's challenged in a separate proceeding that went through the process and was before Judge Moore. This case is, while that challenge is going on, we're obligated through the state put, the school board is, to implement that state put IEP. So that's all that was being challenged was us implementing, you know, a five-, six-year-old IEP for a two-year period while the next IEP is being challenged. Again, it's a bit of an odd procedural circumstance, but that's where we are. So there was no challenge to the substance of that. Does that other case matter over? It is, Your Honor. It was, Judge Moore ultimately, and the ALJ and Judge Moore both found that the IEP that was offered, offered a FAPE, but then there was some issue with compensatory education being owed for some services that weren't provided. There was some implementation in that case. It had both. He awarded some behavioral services compensation. Correct. He didn't determine the . . . The compensation part was okay, but they, because he went to private school, the child went to private school during part of it or something, so he gave some award of some money for behavioral services? Correct. Right? But he didn't determine . . . How much was that? Well, that was never determined by the court, and that was part of the issue. He entered an order with those findings and basically directed the parties to try to work out some arrangement on that. It was appealed and then sent back down because it wasn't determined to be a final order, and that, I think by that time, the parties had moved on to where they were, and so that's where that case sits. It's never been challenged and that case is closed, and there was never an award, an actual amount determined. So, no compensation was provided in that case? Well, no compensation was ordered. I don't . . . Right. Ordered or provided. Well, I honestly, it's not in the record and I can't speak to . . . Okay. But I do know that subsequent to this, the child is now in a residential place, or went to a residential placement. The school board paid for the education component of that, and then Medicaid covered the residential portion of that, and that was in 2008. Do you have a specific understanding of what type of compensatory services the child and his parent are seeking in this case? I mean, I don't, Your Honor. I mean, I don't know what . . . at this point, I mean, the record is from so long ago that it would be hard for me to understand what would be appropriate now. And I ask the Court to simply affirm Judge Maher's order. Thank you. Thank you very much. Unfortunately, the child still needs to learn to read appropriately, still needs many services that were in the IEP and could be still useful even though he is older. He is still needing to . . . What age is your client, because it goes to . . . He is, I believe, twenty-five, somewhere around there. The ALJ didn't, at least in the main order, I haven't looked to see whether there was a subsequent order, doesn't explain exactly what the compensatory services back then were, right? Was there a second order that's, at least at that time, specified what those services were? No. We were attempting to get the district court to determine that and have evidence on that and determine that. In the way these cases work and I'll let Mr. Gill respond too from the table. The way these cases work, if an ALJ orders some compensatory services, are those left sort of vague and to be worked out or are they specifically laid out? They often are. They do it in different ways. If there's a very limited something that they can order, they can order it. They don't have any authority to enforce it. A lot of times, I've been in a case where they tell you to go to work it out and try to work it out. Mr. Gill, you think that is accurate, that it happens sometimes that things are left sort of general and more vague than usual? Yes. It depends on, especially compensatory services, the reimbursement is a finite number. Okay. If it's entered, it would have to be separate from the compensation. Thank you. Go ahead. On the standard of review, it is unique. There may be a lot of question about how to apply it, but clearly in this case where the district court did not apply the correct legal standard or appropriately apply the legal standard and the ALJ did, it is very clear that the ALJ deserved the deference and should have given due weight by the district court and that this court does not have to give the district court any deference because of that. That is clear de novo when you're looking at the, that a district court order is infected with the legal error. I'll go a little bit on one of Judge Jordan's questions from earlier. Is it, can we say that the ALJ applied the right legal standard when your argument is that Andrew F. is relevant and Andrew F. wasn't even in existence at the time of the ALJ's order? Yes. At the time, he used the correct legal standard and applied it properly. At this point in time, even though there's Andrew F., in this case, LJ would, LJ first of all won with ALJ under that standard which had, you know, some courts characterize it as a lower standard than Andrew F., but he would have won under either standard, so it doesn't matter which standard, but clearly you can't fault an ALJ for applying a Supreme Court case that wasn't in existence. So it did what it should have done properly then. And the significance of Andrew F. is that today, since we need to adopt a materiality standard in the 11th Circuit, that today we should be using the current legal standard. Even the district court, like I had said earlier, if it had applied Rowley instead of Andrew, that wouldn't have been reversible error because the core is whether or not the, they looked at the appropriateness of the implementation and the appropriateness of the education. So please articulate for us exactly what you say the standard should be following Andrew F. So school boards should be held accountable for implementation and not denying an appropriate education by failing to materially implement an IEP if the failures are substantial and significant and impede the child's ability to make progress appropriate in light of his circumstances. And that is the way to incorporate Andrew F. into the materiality standard. Repeat the second part of that again. Materially implement the IEP. Yes, if they failed to materially implement the IEP and the failures are substantial and significant and impeded the child's ability to make progress appropriate in light of the child's circumstances. I see I'm over time. Are there any other questions? No. Thank you both very much. Thank you. Thank you.